## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ZILA SWAB TECHNOLOGIES, INC. d/b/a INNOVATIVE SWAB TECHNOLOGIES, | ) ) ) ) | FILED |
| Plaintiff, | ) ) | JAN 2 2003 |
| vs. | ) ) | No. 01 C 8729   MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT |
| DARRELL W. VAN DYKE and GMP PRODUCTS, LLC, | ) ) ) | District Judge Milton I. Shadur |
| Defendants. | ) ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PETITION FOR AN AWARD OF ATTORNEYS FEES UNDER SECTION 35 OF THE LANHAM ACT AND 28 U.S.C. §1927

Defendants, Darrell W. Van Dyke and GMP Products, LLC n/k/a Viridian Packaging Solutions, LLC (sometimes hereinafter "Viridian" or "the Limited Liability Company"), by their attorneys, hereby submit this Memorandum in support of their petition for an award of attorneys fees against Plaintiff, Zila Swab Technologies, Inc. ("Zila"), under authority of Section 35 of the Lanham Act, 15 U.S.C. § 1117, and an award of attorneys fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927.

### INTRODUCTION

After unfavorable rulings from this Court on its overly broad discovery requests seeking the disclosure of all of the Defendants' trade secrets, and in the face of a motion for summary judgment on its Lanham Act claims, Zila filed a "Request for Dismissal and Concession for Summary Judgment" on December 13, 2002. On December 16, 2002, this Court entered an order which in material part dismissed with prejudice "[i]n accordance with Fed. R. Civ. P. 41(a)(2)" Count 1 of Plaintiff's First Amended Complaint consisting of claims arising under the

79

Lanham Act, and otherwise dismissed without prejudice Count 2 of Plaintiff's First Amended Complaint consisting of state law claims. Defendants are thus entitled to "prevailing party" status with respect to the claims asserted in Count 1 of Plaintiff's First Amended Complaint. See Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir. 1985) ("Having already held that a dismissal with prejudice may be granted at any time in a lawsuit because it does not prejudice the defendant, we would be inconsistent to deny the defendant "prevailing party" status, since such a denial would be precisely the type of prejudice to the defendant that we claimed would not occur"); First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1015 (7th Cir. 1985); Dekalb Genetics Corp. v. Pioneer Hi-Bred Int'l, No. 96 C 50240, 2000 U.S. Dist. LEXIS 10629 *3 (N.D. Ill. 2002) (J. Reinhard). See also Cantrell v. Int'l Bhd. Of Elec. Workers, 69 F.3d 456, 458 (10th Cir. 1996) ("Commentators have cited *Schwarz* with approval, observing that a dismissal with prejudice is a 'complete adjudication and a bar to further action between the parties,'" quoting 9 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure 2364, at 277 (2d ed. 1994)); Perry v. Tarry, No. 96 C 7027, 1997 U.S. Dist. LEXIS 9120 * 7-8 (N.D. Ill. 1997) (J. Coar) (dismissal with prejudice is a judgment on the merits).

Count 1 of Zila's First Amended Complaint purported to allege a claim for unfair competition under Section 43(a) Lanham Act, 15 U.S.C. § 1125(a). Zila alleged that it is the common law owner of the marks "GMP" and "INNOVATIVE," and that Viridian's alleged use of those marks was likely to cause confusion as to the origin of Viridian's products. Zila alleged that it had been damaged "in an amount that is not yet fully ascertained or ascertainable and that such damages are irreparable." First Amended Complaint ¶ 10. Zila sought a damage award in the amount of Viridian's profits, an award of treble the amount of damages it had allegedly sustained, and injunctive relief under Lanham Act. Plaintiff in Count 2 of its First Amended

2

Complaint attempted to state a claim under the Illinois Trade Secrets Act, and alleged that supplemental jurisdiction existed for that claim under 28 U.S.C. § 1367(a). First Amended Complaint ¶ 14. Supplemental jurisdiction over Plaintiff's state law claim was based upon this Court's original jurisdiction over the Plaintiff's Lanham Act claim.

Plaintiff's untimely recognition that its claims lacked merit cannot shield it from responsibility for the attorneys fees incurred by the Defendants in their successful defense of the above-captioned litigation. Plaintiff's oppressive conduct justifies an award of fees under both Section 35 of the Lanham Act and 28 U.S.C. § 1927. Plaintiff used its thin allegations about an alleged use of its trademarks and an alleged misappropriation of its trade secrets to attempt to force a judicially-required disclosure of Defendants' own trade secrets.[1] While seeking discovery of all of Defendants' proprietary information, Plaintiff steadfastly refused to comply with its own discovery obligations, resulting in protracted disputes that multiplied the proceedings in the case and unreasonably increased the cost to Defendants. Plaintiff, however, could not support its allegations of trademark infringement, and it never made the requisite showing of its own trade secrets to justify the discovery it sought of the Defendants' proprietary information. This exceptional combination of a lack of merit, oppressive conduct and vexatious litigation warrants a substantial award of attorney's fees in Defendants' favor.

I.      THIS IS AN "EXCEPTIONAL CASE" IN WHICH AN AWARD OF FEES IS WARRANTED UNDER THE LANHAM ACT.

The Lanham Act provides that the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

---

[1] Prior to the entry of the Court's protective order on August 5, 2002, Defendants produced some of its protectable documents to Plaintiff in the course of discovery even though Plaintiff did not reciprocate in a material manner.

3

> Where the defendant is the prevailing party, the standard is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive. A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit.

S Indus., Inc. v. Centra 2000, Inc., 249 F.3d 625, 627 (7th Cir. 2001) (citations omitted).

> [I]t is not difficult to imagine how a suit brought in good faith and lost could be thought so "exceptional" as to warrant the award of attorneys' fees to the defendant. ... [A] suit can be oppressive because of lack of merit and cost of defending even though the plaintiff honestly though mistakenly believes that he has a good case and is not trying merely to extract a settlement based on the suit's nuisance value.

Door Sys., Inc. v. Pro-Line Door Sys., Inc., 126 F.3d 1028, 1302 (7th Cir. 1997).

In this case, all three of the factors cited by the Seventh Circuit in S Indus. are present: Zila's suit lacked merit, the litigation had elements of an abuse of process claim and Zila's conduct unreasonably increased the cost of defending against the suit.

### A.  Zila's Suit Lacked Merit Because Viridian Did Not Use The Marks "GMP" Or "Innovative" In Commerce.

Paragraph 9 of Zila's First Amended Complaint alleged that

> GMP has used and is using, on or in connection with medical devices and/or in connection with containers for such devices, the marks "GMP" and "Innovative" and combinations thereof, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection or association of GMP with Zila, or as to the origin, sponsorship or approval of GMP's products by Zila.

First Amended Complaint ¶ 9.

This allegation, however, was insufficient to establish liability under Section 43(a) of the Lanham Act because Zila failed to allege that Viridian has used the marks "GMP" or "INNOVATIVE" in commerce. Section 43(a) of the Lanham Act requires that those marks be "use[d] in commerce" before civil liability for a false designation of origin can be imposed. 15 U.S.C. § 1125(a)(1). Not only did Zila's pleading fail to allege that Viridian ever placed the

4

allegedly infringing marks on any of its products or the displays associated therewith or that its goods were sold or transported in commerce, but the uncontroverted facts in this case showed that Viridian never did. The lack of Viridian's "use in commerce" of the allegedly infringing marks was fatal to Zila's Lanham Act claim. In <u>Juno Online Servs., L.P., v. Juno Lighting, Inc.</u>, 979 F. Supp. 684 (N.D. Ill. 1997), Judge Leinenweber dismissed a complaint alleging a Lanham Act violation against a company that registered a domain name on the internet that was substantially similar to the plaintiff's unregistered trade name. The plaintiff's complaint, however, failed to allege that the defendant actually used its domain name; the defendant was only "warehousing" it. Judge Leinenweber found that allegation insufficient to state a Section 43(a) claim: "[T]he 'use in commerce' requirement would only be fulfilled if defendant were to use the Internet. The mere 'warehousing' of the domain name is not enough to find that the defendant placed the mark on goods or 'used or displayed [the mark] in the sale or advertising of services' as required." 979 F. Supp. at 691 (citations omitted; quoting 15 U.S.C. § 1127; second alteration in quoting authority).

As this Court has observed, Viridian's previous adoption of the name "GMP Products, LLC" and the phrase "Innovative Packaging Solutions" on its letterhead did not constitute a "use in commerce." The Lanham Act requires "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark," which, for the use of a mark in connection with goods, also requires the mark to be "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto . . . ." 15 U.S.C. § 1127. Viridian never placed the allegedly infringing marks on the goods or their containers or the displays associated therewith. Nor did Viridian ever use the allegedly infringing marks in the ordinary course of trade. Its preliminary and then abandoned adoption of

a name and a slogan are insufficient to establish that it used any allegedly infringing mark in commerce.

Moreover, the allegations of Paragraph 9 of the Amended Complaint were materially untrue and/or inaccurate when made, and should have been but were not subsequently modified or withdrawn on a timely basis as additional information became available to Plaintiff and its counsel through discovery and otherwise. The facts which support this conclusion are recited and documented in Defendants' Petition for an Award of Attorneys Fees Under Section 35 of the Lanham Act and 28 U.S.C. §1927, filed on December 30, 2002.

**B.    Plaintiff's Oppressive Conduct Unreasonably Increased The Cost Of Defending Against The Suit.**

In addition to unreasonably and vexatiously multiplying these proceedings by making allegations having an inadequate legal and/or factual basis, Plaintiff's counsel also unreasonably and vexatiously multiplied these proceedings during the course of discovery by a) oppressively attempting to condition discovery upon a proposed form of protective order that was intended to preclude disclosure to Defendant Van Dyke of the tangible things and intangible information he was accused by Plaintiff of misappropriating; b) burdening the discovery process by withholding documents from production or otherwise by imposing conditions upon document production that were unreasonably burdensome, oppressive and expensive for Defendants; and c) otherwise unreasonably burdening and delaying the discovery process.

This Court recognized the unreasonability of Plaintiff's conduct in its August 5, 2002 Memorandum Opinion and Order ("August 5 Mem.") sustaining the Defendants' objections to the rulings of the Magistrate Judge with respect to Plaintiff's discovery requests and granting Defendants' motions for a protective order and to compel. A copy of the August 5 Opinion and Order is attached hereto as Exhibit A. Noting that a plaintiff seeking the disclosure of a

defendant's trade secrets must first particularly identify its own trade secret and also specify its efforts to maintain its secrecy, this Court found that "Zila's supplemental responses to defendants' repeated demands for such specificity go well down the road of showing the 'concrete secrets' to which [case authority] refers. But what is certainly lacking at this point is any showing by Zila on the second requirement, . . . the employer's secrecy measures." August 5 Mem. at 3-4. This Court concluded: "But before a plaintiff can invade the valuable business information of a new competitor (perhaps therefore gaining a leg up in the competitive market), it must provide much more than Zila has done here. It is the absence of those prerequisites to relief that requires this Court to sustain defendants' objections to the Order in their entirety." August 5 Mem. at 4-5 (footnotes omitted). This Court also noted, in a footnote, that "Zila's listing of some 75 companies in a fashion that seeks to take them out of bounds as potential customers for defendants seems to smack of nothing more than an anticipated attempt by Zila to monopolize a market in which the parties may compete with each other." August 5 Mem. at 4 n.3.

The record in this case is replete with documentation of the burdens and delays that Plaintiff imposed on the discovery process before finally seeking the dismissal of its Lanham Act claims with prejudice. The arduous course of discovery was summarized in Defendants' Memorandum Submitted in Support of Their Rule 72(a) Objections to Magistrate's Order of April 25, 2002 and Their Consolidated Rule 26(c)(7) Motion for Protective Order and Rule 37(a) Motion to Compel Discovery, filed on May 29, 2002 (hereinafter the "Consolidated Rule 26(c)(7) and Rule 37(a) Motions"), and Defendants' Reply Memorandum Submitted in Further Support of Their Rule 72(a) Objections to Magistrate's Order of April 25, 2002 and Their Consolidated Rule 26(c)(7) Motion for Protective Order and Rule 37(a) Motion to Compel

Discovery, filed on July 12, 2002. Those motions were supported in material part by the Declaration of Attorney John M. Drews Submitted in Further Support of Defendants' Rule 26(c)(7) Motion for Protective Order and Motion to Compel, filed on July 9, 2002 ("Drews Declaration"), which detailed Defendants' unsuccessful attempts to obtain the deposition of John Rowe and William Casey, employees of Plaintiff, as well as details of Plaintiff's claimed fusion molding process for manufacturing swab assemblies. The Drews Declaration documented the failure of the documents produced by Plaintiff in discovery to describe (a) "the identity of Zila's suppliers of wood-handled swabs and components of Zila's probe covers, including...the costs and characteristics of such components;" (b) "the identity of the tool maker which is knowledgeable in manufacturing the specialized tooling used in Zila's fusion molding process, including...the costs and characteristics of such tooling available from this supplier;" or (c) "Zila's fusion molding process including polymer raw material characteristics, costs and sources of supply, molding temperature-time relationships and other process parameters, production rates and labor requirements and costs" that Plaintiff alleged in Paragraphs 18-19 of its amended complaint were, or inevitably would be, misappropriated by Defendants.

On July 26, 2002, Defendants filed their Motion for Summary Judgment on Count 1 of the Amended Complaint Consolidated with Defendants' Motion to Dismiss Count 2 of the Amended Complaint. Five days later, on July 31, 2002, Plaintiff filed the Declaration of David G. Duckworth in Support of Request for Denial or Continuance of Summary Judgment Motion to Dismiss Under F.R.C.P. 56(f) ("Duckworth Declaration"). That Declaration recited: "Unfortunately, evidence relating to Defendants' use of the marks GMP and INNOVATIVE is presently available only to Defendants." Duckworth Declaration ¶ 6. Plaintiff's counsel stated: "Plaintiff cannot present by affidavit facts essential to its opposition to Defendants [sic] Motion

for Summary Judgment." Duckworth Declaration ¶ 10. Attached as an exhibit to the Duckworth Declaration was a copy of his July 29, 2002 letter to Defendants' counsel, which recited:

> For Plaintiff to respond to your motion, Plaintiff will require documents and answers to Interrogatories which are the subject of Plaintiff's pending Motion to Compel.... Namely, Plaintiff's discovery requests seek documents and identification of communications with potential customers, and suppliers of materials and tooling. Of course, such communications by Defendants included Defendants' usage of the marks GMP and INNOVATIVE.

Duckworth Declaration Exhibit 1 at 1.

At the initial hearing on Defendants' motion for summary judgment on August 1, 2002, this Court was unconvinced by Plaintiff's stated need for discovery unrelated to its Lanham Act claims, and instead required Plaintiff to submit affidavits establishing the basis for its allegations that the Defendants had used the allegedly infringing marks in commerce. A copy of the transcript of proceedings on August 1, 2002 is attached hereto as Exhibit B. Meanwhile, Plaintiff's oppressive conduct with respect to discovery continued in the month of August, 2002, as the Declaration of Attorney David A. Belofsky Submitted in Support of Defendants' Petition for an Award of Attorneys Fees Under Section 35 of the Lanham Act and 28 U.S.C. §1927 ("Belofsky Declaration"), filed contemporaneously herewith, attests. In August, Plaintiff continued to withhold written discovery and delayed scheduling the depositions of Plaintiff's agents John Rowe and William Casey.

Moreover, on August 14, 2002, Plaintiff's counsel contradicted the representations made in Plaintiff's initial Rule 26(a) disclosure statement when he confessed that Plaintiff was not in possession of documents relating to instances of actual confusion resulting from Defendants' alleged infringing use of Plaintiff's marks or relating to its own trade secret manufacturing procedure. These statements contradicted Plaintiff's initial disclosures that it had various "files" relating to its Lanham Act claim and its trade secret information and materials. See Consolidated

9

Rule 26(c)(7) and Rule 37(a) Motions, Exhibit A. Nonetheless, Plaintiff's counsel incongruously contended that the production of documents relating to Plaintiff's alleged Lanham Act and trade secret claims would encompass every document in Plaintiff's possession, and used that fabrication as an unreasonable excuse to delay and defer document production indefinitely.[2] Despite months of Defendants' efforts, dozens of letters written to Plaintiff's counsel and several applications to this Court for assistance, Plaintiff produced less than 250 pages of documents during the entire course of discovery. These documents, which were all produced in May, 2002, are attached as exhibits to the Drews Declaration. Despite the Parties' prolonged negotiations with respect to Plaintiff's production of documents to La Salle Copy Service for duplication, Plaintiff failed to make even a single document available. See Belofsky Declaration ¶¶ 10-23 and the Declaration of John Ruder, attached hereto as Exhibit C. Such was the thin reed upon which this unreasonably expensive litigation was built by Plaintiff.

On November 12, 2002, this Court denied Plaintiff's request to delay its response to Defendants' motion for summary judgment pending the completion of further discovery. In doing so, this Court concluded: "[O]n the facts that have been tendered to date -- and have not been diluted in the least by Zila's submissions -- there seems to be no way in which Zila can obtain any of the relief that it seeks in FAC Count 1." November 12, 2002 Memorandum Opinion and Order ( a copy of which is attached hereto as Exhibit D) at 3. Finally conceding the obvious, Plaintiff sought to dismiss its claims shortly thereafter.

---

[2] Defendants served upon opposing counsel a narrowly crafted request for the production of the "documents referenced in the Plaintiff's initial disclosure statement" on February 22, 2002. See Consolidated Rule 26(c)(7) and Rule 37(a) Motions, Exhibit B. Plaintiff's failure to produce the "files" it particularly identified in its initial disclosure statement was a subject of continuing controversy. See, e.g., id., ¶ 8 & Exhibit F.

This Court's suspicions about Plaintiff's true motivations in prosecuting this litigation are correct. Plaintiff attempted to use its unsupported claims of trademark infringement and misappropriation of trade secrets as a lever to obtain "the valuable business information of a new competitor (perhaps therefore gaining a leg up in the competitive market)." August 5 Mem. at 4. This oppressive conduct "had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." S Indus., supra, 249 F.3d at 627. This is thus an "exceptional case" in which reasonable attorney fees should be awarded to the prevailing party, the Defendants.

## II.    AN AWARD OF FEES IS ALSO WARRANTED AGAINST PLAINTIFFS' COUNSEL UNDER 28 U.S.C. § 1927 FOR UNREASONABLY AND VEXATIOUSLY MULTIPLYING THE PROCEEDINGS IN THIS ANY CASE.

The same conduct supporting an award of fees under Section 35 of Lanham Act also supports an award against Plaintiff's counsel under 28 U.S.C. § 1927. Pursuant to that statute, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[O]ur past decisions have interpreted vexatious to mean either subjective or objective bad faith." Kotsilieris v. Chalmers, 966 F.2d 1181, 1184. (7th Cir. 1992). "[W]e have held that the bad faith standard has an objective component, and extremely negligent conduct, like reckless and indifferent conduct, satisfies this standard." 966 F.2d at 1185.

> Section 1927 clearly is punitive and thus must be construed strictly. A court may impose section 1927 fees only to sanction needless delay by counsel. The purpose of section 1927 is to penalize attorneys who engage in dilatory conduct. To be liable under section 1927, counsel must have engaged in "serious and studied disregard for the orderly process of justice." Where, as here, counsel's alleged misconduct was the filing and arguing of a claim, it is not sufficient that the claim be found meritless; the claim must be without a plausible legal or factual basis and lacking in justification.

Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 226-27 (7th Cir. 1984) (citations and footnote omitted) (quoting Overnite Transp. Co. v. Chicago Indus. Tire Co., 697 F.2d 789, 795 (7th Cir. 1983)).

In this case, Plaintiff's counsel engaged in "serious and studied disregard for the orderly process of justice." Not only did counsel file Lanham Act claims "without a plausible legal or factual basis and lacking in justification," but counsel thereafter engaged in dilatory conduct and a vexatious pursuit of discovery to which Plaintiff had no right to obtain. An examination of the attorney's fees and expenses incurred by Defendants in their defense of Plaintiff's claims will demonstrate that a substantial portion of those costs were incurred in defense of Plaintiff's meritless Lanham Act claims, attempts to discover the factual bases for the allegations in Plaintiff's complaint and rebuffing Plaintiff's unjustified attempts to extract the disclosure of Defendants' trade secrets through the discovery process.

WHEREFORE, Defendants, Darrell W. Van Dyke and GMP Products, LLC n/k/a Viridian Packaging Solutions, LLC respectfully pray that this Honorable Court enter an appropriate award of attorneys fees against Plaintiff Zila Swab Technologies, Inc. under authority of Section 35 of the Lanham Act, 15 U.S.C. § 1117, and an award of attorneys fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927.

Respectfully submitted,

Darrell W. Van Dyke and
GMP Products, LLC n/k/a
Viridian Packaging Solutions, LLC

By: _____
One of their Attorneys

12

David A. Belofsky
Douglas M. Belofsky
Lance R. Minor
Belofsky & Belofsky, P.C.
33 North Dearborn Street
Suite 2330
Chicago, IL 60602
(312) 759-3737

John M. Drews
Drews & Associates, P.C.
1900 Spring Road
Suite 200
Oak Brook, IL  60523
(630) 954-2875

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to the United States District Court for the Northern District of Illinois, certifies that true and correct copies of the foregoing Defendants' Memorandum in Support of their Petition for an Award of Attorneys Fees Under Section 35 of the Lanham Act and 28 U.S.C. §1927 were served upon the following attorneys for Plaintiff:

> Timothy M. McCarthy, Esq.
> Trexler, Busnell, Gianiorgi
> Blackstone & Marr, Ltd.
> 105 West Adams
> 36th Floor
> Chicago, IL 6063
>
> and
>
> David G. Duckworth, Esq.
> Drummond & Duckworth
> 5000 Birch Street
> Suite 440
> Newport Beach, CA 92660

by First Class Mail, proper postage prepaid, from 33 North Dearborn Street, Chicago, Illinois 60602 on the 21st day of January, 2003.

14

# *See Case File for Exhibits*